LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
HONG-AN VU (SBN 266268)
*HVu@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
ALCLEAR, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MEREDITH MEAD on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALCLEAR, LLC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-07480-SVW-MAA<br><br>**DECLARATION OF JAMES HAHN IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND REQUEST TO DISMISS OR STAY COURT PROCEEDINGS PENDING ARBITRATION**<br><br>Date:      October 5, 2020<br>Time:      1:30 p.m.<br>Courtroom: 10A<br>Judge:     Hon. Stephen V. Wilson<br><br>Filed concurrently with:<br><br>1. Notice of Motion and Motion; Memorandum in Support<br>2. Declaration of Hong-An Vu;<br>3. Request for Judicial Notice; and<br>4. [Proposed] Order |

I, James Hahn, declare as follows:

1. I am Vice President of Operations – Member and Employee Experience at Alclear, LLC ("CLEAR"). I am over the age of eighteen. I make this declaration in support of CLEAR's Notice of Motion and Motion to Compel Arbitration and Request to Dismiss or Stay Court Proceedings Pending Arbitration. I have personal knowledge of the following facts and, if called as a witness, I could and would testify truthfully and competently thereto.

2. I have a BSBA in Business Administration: Economics and Entrepreneurship Concentrations and Leadership Studies from the University of Richmond – Robins School of Business.

3. I joined CLEAR in 2017 as an Employee Experience Manager and was quickly promoted to Director of Learning and Development. In April 2019, I was promoted to Senior Director for Field Excellence. Since February 2020, I have been Vice President Operations – Member and Employee Experience.

4. Since I started at CLEAR and in each of my roles with the company, I have been involved in various aspects of CLEAR's enrollment process. I developed CLEAR's current employee training program which includes in depth training for field employees that assist customers with the enrollment process. In addition, I collaborate with the technical, product and customer service teams on the design of and updates to the enrollment process flow as well as oversee the quality assurance process as to customers' enrollment experience and use of CLEAR's services.

5. CLEAR is a technology company, which offers a biometric identity verification platform that provides a secure, frictionless experience for its customers at U.S. airports and other venues nationwide.

6. CLEAR users enroll through a three-step identity verification process that has received SAFETY Act Certification as a Qualified Anti-Terrorism Technology from the U.S. Department of Homeland Security.

7. CLEAR's identity verification process links a user's verified identity to an authenticated government-issued identification document (*e.g.*, a driver's license or passport), then links that verified identity and government-issued document to the user's ten fingerprints, iris image, and facial image.

8. CLEAR members who sign up and pay for CLEAR's airport service can bypass certain steps at Transportation Security Administration (TSA) airport security checkpoints by using dedicated CLEAR lanes, where CLEAR biometrically verifies identities and validates travel documents (*e.g.*, boarding pass).

9. With over 5 million participants, CLEAR is currently operating at several dozen U.S. airports and other venues nationwide.

10. CLEAR members may sign-up for its services either online at CLEAR's website, through a mobile application, or in-person at CLEAR locations.

11. Based on CLEAR's records maintained in the usual course of its business, Plaintiff became a CLEAR member by enrolling in person at an enrollment center at Los Angeles International Airport (LAX) on November 10, 2017.

12. **Exhibit A** is a true and correct copy of CLEAR's Terms and Conditions in effect in November 2017.

13. CLEAR's Terms and Conditions have always contained an arbitration provision with a class action waiver.

14. On November 10, 2017, Plaintiff came to the CLEAR enrollment center in at LAX, spoke with a CLEAR representative staffing that location, and elected to sign-up for an annual CLEAR membership with the assistance of that representative.

15. Every CLEAR enrollment center is staffed with a CLEAR representative who assists users with the enrollment process and can answer any questions a user may have.

16. Plaintiff enrolled using the CLEAR computer station or "pod" located at an LAX enrollment center.

17. Each pod is equipped with a 12.3 inch (diagonal) Microsoft Surface Pro Tablet, an ID document and credit card scanner, and a fingerprint and iris scanner. **Exhibit B** contains screenshots of the in-person enrollment process Plaintiff completed to become a CLEAR member. Exhibit B reproduces the screens on 8.5 x 11 paper with standard margins, resulting in the screenshots appearing smaller than they would if presented on a CLEAR pod.

18. On the pod, a CLEAR representative assisted Plaintiff with scanning her fingerprints and/or iris. Ex. A at 2-5.

19. As she was new user, Plaintiff was then directed to create a Member Account. *Id*. at 6.

20. To create an account, Plaintiff provided a government-issued identification document (*e.g.*, license or passport) and a credit card, which were then scanned using the equipment available at the pod. *Id.*

21. Her credit card was not charged at that stage.

22. Plaintiff was then directed to verify her personal and payment information. *Id.* at 8-9.

23. Plaintiff was separately presented with, and asked to review, CLEAR's full Terms and Conditions. *Id.* at 9.

24. **Exhibit C** contains screenshots of the content of Terms and Conditions as presented on pods at CLEAR enrollment centers in November 2017. When presented at a CLEAR enrollment center on the pod, the Terms and Conditions appear on a 12.3 inch diagonal, color computer screen. Here, Exhibit C reproduces them on 8.5 x 11 paper with standard margins, resulting in the screenshots appearing smaller than they would if presented on a CLEAR pod.

25. The Terms and Conditions provided on the screen appeared in 12 point font with a scroll bar on the right-hand side, which allowed Plaintiff to scroll up or down in order to read and review all of the Terms and Conditions.

26. The only content on this screen were the Terms and Conditions and the buttons necessary to accept the Terms and proceed with enrollment.

27. At the top of the screen (i.e., appearing without the need to scroll down), the 2017 Terms and Conditions advise Plaintiff to

> Review our complete Terms and Conditions by scrolling to the bottom. You must accept our Terms and Conditions before continuing the enrollment process.

*See* Ex. C.

28. The Terms and Conditions then further disclosed to Plaintiff (again, on the initial screen, without needing to scroll down) that she was entering into an agreement with CLEAR that would be governed by the Terms and Conditions, stating:

> By clicking the "I AGREE" button that follows these Terms and Conditions, or otherwise enrolling in any of the programs offered by Alclear, LLC ('CLEAR') ('Program'), or participating in the Programs, the enrolling or participating individual ('Member') agrees [to the Terms and Conditions]:

*See* Ex. C.

29. In order to proceed with enrollment, Plaintiff was asked to confirm her agreement to the fully-disclosed Terms and Conditions by clicking the "I Agree to CLEAR's Terms and Conditions" button at the bottom of the Terms and Conditions screen.

30. Plaintiff clicked "I Agree to CLEAR's Terms and Conditions," and then completed the remaining steps necessary to finalize her enrollment with CLEAR.

31. Although Plaintiff completed her enrollment on November 10, 2017, she was not charged for CLEAR's services until thirty (30) days after she enrolled. Plaintiff had the option to cancel at any time during this 30 day trial period.

32. CLEAR's records show Plaintiff used CLEAR's lanes to expedite her entry into various locations 21 times since she first enrolled.

33. CLEAR's Terms and Conditions have always allowed its members to obtain a pro-rated refund if they choose to cancel their membership before the end of their subscription year.

34. Members may request a refund by reaching out to Member Services via chat, email, or phone. CLEAR routinely provides members who request a refund either a full or prorated refund of the fees they paid for the current annual term.

35. In fact, although the Terms and Conditions allow CLEAR to charge a $30 cancellation fee, CLEAR routinely waives the cancellation fee.

36. Prior to renewal of any subscription, members receive notice at the email they provided to CLEAR that their membership will renew and that CLEAR will charge the credit card provided unless the membership is cancelled.

37. In addition, since November 2017, subsequent amendments to CLEAR's Terms and Conditions provide extra assurance that CLEAR members such as Plaintiff will have unfettered access to the arbitral forum. **Exhibit D** is a true and correct copy of CLEAR's current terms and conditions.

38. CLEAR has devoted substantial resources to ensuring that its platforms remained open and available to its members at airports throughout the United States during the COVID-19 pandemic and has never closed its platforms or airport services.

//
//
//

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct.

4  Executed on September 4, 2020.

*[signature]*

JAMES HAHN